Eneida **AGUILAR**, as personal representative of the estate of David Aguilar, deceased and on her own behalf as surviving wife of David Aguilar and on behalf of their surviving children, Dominic, Fernando, Charde, Cherrelle, and Damian Aguilar; Robert Aguilar, husband; Edilia Aguilar, wife, Plaintiffs–Appellees,

v.

**DRUG ENFORCEMENT AGENCY,**
Defendant

and

**United States of America,**
Defendant–Appellant.

No. 99–16867.

D.C. No. CV–97–00477–RHW.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 15, 2001.

Decided Aug. 2, 2001.

Before SCHROEDER, Chief Judge, WALLACE, TALLMAN, Circuit Judges.

MEMORANDUM [*]

The United States appeals a district court judgment in favor of Eneida Aguilar, her children, and her parents-in-law, all of whom are the statutory beneficiaries of Eneida's husband, David Aguilar. The beneficiaries brought suit under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 et seq., after David was shot and killed by James Laverty, a Special Agent of the Drug Enforcement Administration.

An advisory jury found, and the district court agreed, that the government should be liable for David's death because Laverty was not acting in self-defense when he shot David. The district court then awarded damages to the estate's beneficiaries.

■ The FTCA's provisions incorporate the law of the state where the alleged tort occurred. Because the alleged tort occurred in Arizona, its law determines whether Aguilar's estate can recover on account of David's death. *See Shaw v. United States*, 741 F.2d 1202, 1205 (9th Cir.1984). The determination of whether someone acted in self-defense is a factual one, reviewed for clear error. *See Garcia v. United States*, 826 F.2d 806, 810 (9th Cir.1987)(holding, under Arizona law, that the question of whether a person acted in self-defense is a question of fact).

There is no indication that the district court erred in stating, or misapplied, the law. The district court correctly concluded that self-defense is an affirmative defense. *See Hansen v. Garcia*, 148 Ariz. 205, 713 P.2d 1263, 1265 (Ariz.App. 1985). The district court also explained, correctly, the legal standard for determining whether someone is entitled to use deadly force in self-defense. *See* A.R.S. § 13–405. The government disputes none of these legal conclusions. Rather, the dispute between the plaintiffs and the government appears to be primarily factual.

The district court resolved that dispute in the plaintiffs' favor, concluding that Laverty did not act in self-defense. Its conclusion is supported by the record. The court found Dominic's testimony was more credible than Laverty's. Laverty testified that David pointed his rifle at Laverty through the windshield of Laverty's car, and continued to point it at Laverty even after the DEA agent pulled out his own gun. Laverty also testified that David never tried to run away. Dominic testified that as soon as Laverty backed up his car and before Laverty began firing, David lowered his gun, and did not raise it again. Instead, Dominic testified, David ran away from Laverty's car, through a small patch of desert toward a neighbor's house. Laverty followed David, then pulled up to the house, rolled down the driver side window, and continued shooting at David from the window. In sum, the

---

[*] This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by 9th Cir. R. 36–3.

testimony that the district court found more credible indicates that David was trying to retreat. None of the expert testimony or objective evidence before the court contradicted Dominic's testimony, and Dominic withstood aggressive cross-examination. The district court's findings are not clearly erroneous.

█ Neither does A.R.S. § 12–712 protect the government from liability to David's estate. That statute prevents recovery by anyone injured as a result of negligence or gross negligence while the person is committing a felony. David undeniably committed a felony when he first approached Laverty's vehicle and pointed his sawed-off rifle at Laverty, but Laverty did not negligently kill David. Instead, Laverty intended to fire upon David. The government, for tactical reasons, did not want to characterize Laverty's actions as negligence at trial, and sought to prevent, for its part, the advisory jury from receiving any instructions on negligence. It acknowledged the shooting was deliberate but was justified by self-defense. The trial court and advisory jury credited Dominic's version of events rather than Laverty's. The government waived any defense based on the contention that Laverty's actions constituted negligence.

█ The government also challenges the district court's award of $1.3 million to David's estate. The award is supported by the findings of fact arising from the testimony of a dozen witnesses indicating that David's family suffered loss of love, pain, and expenses as a result of his death. These are all losses that merit compensation under Arizona law. *See South. Pac.*

*Trans. Co. v. Lueck,* 111 Ariz. 560, 535 P.2d 599, 612 (Ariz.1975).

AFFIRMED.

TALLMAN, Circuit Judge, dissenting.

Having concluded that Agent Laverty's life was in imminent danger sufficient to warrant invocation of deadly force when David Aguilar first assaulted him with a loaded, sawed-off rifle, the district court erred as a matter of law when it parsed the officer's split-second decision and found that the danger had passed at the moment the fatal shot was fired. As our Court has cautioned in reviewing police deadly force cases, "liability cannot rest upon such an exercise in '20–20 hindsight.'" *Garcia v. United States,* 826 F.2d 806, 812 n. 14 (9th Cir.1987). Assuming Dominic's testimony is accurate, I fail to see how Aguilar's slight lowering of the gun while Laverty began to back up his car dissipated the state of imminent danger the officer still faced. Laverty was always well within range of the rifle, which Aguilar could easily have raised and fired within an instant. As Justice Holmes so trenchantly observed, "[d]etached reflection cannot be demanded in the presence of an uplifted knife." *Brown v. United States,* 256 U.S. 335, 343, 41 S.Ct. 501, 65 L.Ed. 961 (1921). I respectfully dissent.