**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

MAY 01 2015

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

|  |  |
|---|---|
| GLEN R. SCOTTI, an individual,<br><br>             Plaintiff - Appellant,<br><br>   v.<br><br>CITY OF PHOENIX, a political subdivision of the State of Arizona; JACK HARRIS; MARY FREUND; CHRISTINA GONZALEZ; DAVID SAMPSON; SANDRA RENTERIA,<br><br>             Defendants - Appellees. | No. 13-15209<br><br>D.C. No. 2:09-cv-01264-TMB<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the District of Arizona
Timothy M. Burgess, District Judge, Presiding

Argued and Submitted March 13, 2015
San Francisco, California

Before: WALLACE, M. SMITH, and WATFORD, Circuit Judges.

Scotti appeals from the district court's order granting summary judgment

against him on his section 1983 malicious prosecution claim and his state-law

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

negligence claims. He also appeals from the district court's interlocutory rulings declining to take judicial notice and to apply judicial estoppel.

We have jurisdiction pursuant to 28 U.S.C. § 1291. We review a summary judgment de novo, *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014), and we review the particular interlocutory rulings challenged here for an abuse of discretion. *See Ritter v. Hughes Aircraft Co.*, 58 F.3d 454, 458 (9th Cir. 1995) (judicial notice); *United States v. Ibrahim*, 522 F.3d 1003, 1009 (9th Cir. 2008) (judicial estoppel). We affirm.

## I.

We begin with Scotti's malicious prosecution claim. We are concerned about some of Detective Freund's actions and the overall poor quality of police work which produced misleading and, in some cases, outright false statements to Scotti's prosecutors. For example, rather than independently obtain and analyze the family court order, Freund relied upon Kimberly Lewis's statements about its contents, which led to misstatements about what constituted violations of that order. Similarly, Freund never confirmed that Sandra Gray was not in fact a psychologist, even though Freund spoke directly to Gray. Freund simply relayed secondhand allegations of what "Dr." Gray supposedly had said regarding

2

Rehkow's behavior, even after Freund confirmed that Gray herself had not said "anything near that."

Nevertheless, the existence of independent probable cause is an absolute defense to a malicious prosecution claim. *Lassiter v. City of Bremerton*, 556 F.3d 1049, 1054-55 (9th Cir. 2009); *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995); *see Gonzales v. City of Phoenix*, 52 P.3d 184, 187 (Ariz. 2002) (en banc). Here, we must affirm the district court because we conclude that probable cause—independent of the false information conveyed by Freund—supported Scotti's arrest and prosecution. *See Smith v. Almada*, 640 F.3d 931, 938 (9th Cir. 2011) (rejecting plaintiff's claim that an officer's "false statements and failure to disclose material information to the prosecutor caused [his] malicious prosecution" because "even after correcting for the allegedly false and omitted information[,] . . . probable cause supported [plaintiff's] arrest . . . [and] prosecution").

Arizona law defines probable cause in the context of a malicious prosecution claim as "a reasonable ground of suspicion, supported by circumstances sufficient to warrant an ordinarily prudent man in believing the accused is guilty of the offense." *Gonzales*, 52 P.3d at 187 (internal quotation marks omitted). Scotti was arrested and ultimately indicted as an accomplice to Rehkow's alleged stalking. To establish probable cause, Defendants were therefore required to have a "reasonable

3

ground of suspicion" that two things had occurred. First, that Rehkow "knowingly engage[d] in a course of conduct[,] . . . directed toward another person[,] . . . that . . . [w]ould cause a reasonable person to fear death of that person or that person's immediate family member[,] and that person in fact" so fears. ARIZ. REV. STAT. § 13-2923(A)(2); and second, that Scotti intended to promote or facilitate Rehkow's alleged stalking conduct, and that Scotti counseled, agreed to aid, or attempted to aid Rehkow in planning or committing the offense, or at least provided Rehkow the means or opportunity to commit the offense. *See id.* § 13-301. The question is whether Defendants lacked a "reasonable ground of suspicion" that those two circumstances were present.

With respect to Rehkow's conduct, Freund stated in her police report (and it is not disputed) that Kimberly Lewis told Freund that Rehkow's pattern of behavior caused her to fear for her life. This fear was based on Rehkow's prior history of sending threatening communications during the course of a protracted custody battle, and his hiring a private investigator who posted sealed information online and who took photographs and videos of Lewis and her daughter at her dance studio. In addition, Lewis reported that she believed Rehkow had been behind a string of property damage to homes and vehicles belonging to her and her

4

relatives and friends, which began only after Lewis became involved with Rehkow. During this same time, Lewis also found her dog drowned in her pool.

As for Scotti's involvement in Rehkow's allegedly illegal course of conduct, Freund reported (and it is not disputed) that Scotti was behind the "Blackrobe" websites to which he posted sealed information relating to the custody case, including Lewis's daughter's name and age. Scotti was also at Lewis's dance studio and took pictures of Lewis. Upon executing a valid search warrant of Scotti's residence, Defendants uncovered dry-erase boards referring to the Rehkow/Lewis case and listing the names and driving directions to the home addresses of both the assigned judge and Detective Freund. During the search, detectives also discovered a sexually explicit honeymoon video of Rehkow and Lewis, accompanied by a letter from Rehkow to Scotti granting him permission to use the tape "for bachelor parties." Further solidifying Scotti's connection to Rehkow's allegedly illegal conduct, detectives found emails between Rehkow and Scotti discussing wiretapping Lewis's home and cell phones, as well as other emails discussing rummaging through Lewis's trash for "anything that can be used against her."

It may well be true that some of these activities are run of the mill for private investigators, and do not themselves amount to aiding and abetting stalking.

5

However, the totality of the above circumstances—independent of the misleading or false statements in Freund's police report—provided a "reasonable ground of suspicion" that Rehkow engaged in a course of conduct that actually caused Lewis reasonably to fear death, and that Scotti intended to, and did, assist Rehkow in engaging in that course of conduct, or at least provided him the "means or opportunity" to do so. *See Almada*, 640 F.3d at 938. We therefore affirm summary judgment of Scotti's malicious prosecution claim as to all defendants.

We do not reach Scotti's *respondeat superior* theory of liability because it was inadequately briefed. *See James River Ins. Co. v. Hebert Schenk, P.C.*, 523 F.3d 915, 920 n.1 (9th Cir. 2008) (refusing to consider an issue that was "inadequately presented" in the opening appeal brief ).

## II.

It follows that the existence of independent probable cause also compels us to affirm summary judgment on Scotti's state-law negligence and gross negligence claims. *See Hansen v. Garcia, Fletcher, Lund & McVean*, 713 P.2d 1263, 1265 (Ariz. Ct. App. 1985) (affirming summary judgment on the basis that "[s]ince the officers made an arrest with probable cause, there were no facts before the trial court which would support [plaintiff's] claim that the officers' conduct [amounted to negligence or gross negligence]").

6

## III.

Finally, the district court did not err in declining to take judicial notice of the criminal court's factual findings. *See Wyatt v. Terhune*, 315 F.3d 1108, 1114 (9th Cir. 2003) ("[T]aking judicial notice of findings of fact from another case exceeds the limits of Rule 201."), *overruled on other grounds by Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014). In addition, the district court committed no error in refusing to apply the doctrine of judicial estoppel because Scotti failed to establish the required elements. *See Ibrahim*, 522 F.3d at 1009.

**AFFIRMED.**

WATFORD, Circuit Judge, dissenting in part:

I would affirm as to all defendants except Detective Freund. In my view, a reasonable jury could conclude that Freund knew she lacked probable cause to believe Scotti had aided and abetted a violation of Ariz. Rev. Stat. § 13-2923(A)(2) (2001) (amended 2012), yet nonetheless instituted charges as a means of retaliating against Scotti for exercising his First Amendment rights—namely, for publicly criticizing Freund on his web site.

Once we excise from Freund's report the statements Freund falsely attributed to "Dr." Gray, the existence of probable cause turns on statements Lewis allegedly made to Freund. The problem here is that during the course of discovery, Freund never deposed Lewis, so we don't know whether Lewis in fact made the statements attributed to her. On the current record, a jury would have to take Freund's word for it that Lewis actually made the statements recounted in Freund's report. Because Scotti has already shown that Freund falsely represented the statements "Dr." Gray supposedly made, I think a reasonable jury could harbor serious doubts about whether Freund truthfully represented the statements Lewis supposedly made as well.

If the jury concluded that Freund knowingly falsified the statements attributed to both Lewis and Gray, the remainder of the evidence cited by the

majority would fall short of establishing probable cause.  Freund would not be entitled to qualified immunity in that event, because maliciously prosecuting someone for exercising their First Amendment rights violated clearly established law at the time Freund drafted her report.  *See Beck v. City of Upland*, 527 F.3d 853, 861 n.7, 871 (9th Cir. 2008).

I would therefore reverse the grant of summary judgment to Freund.